# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-3165
_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Northern District of Iowa. |
| Vicente Rosal Abad, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: October 23, 2003

Filed:   November 28, 2003
_____

Before RILEY, BOWMAN, and SMITH, Circuit Judges.
_____

RILEY, Circuit Judge.

Vicente Abad (Abad), a 26-year old resident alien, was arrested and indicted for traveling from his United States residence in Florida to Iowa to commit criminal sexual activity with a 13-year old girl Abad met in an Internet chat room for 13- and 14-year olds. The magistrate judge ordered Abad released pending trial. The district court denied the government's appeal of the pretrial release order. Because we conclude the government (1) met its burden, by clear and convincing evidence, to show Abad is a danger to the community and (2) met its burden, by a preponderance of the evidence, to show Abad is a flight risk, we reverse and vacate the release order.

## I.  BACKGROUND

On July 17, 2003, Abad was arrested and later was indicted for interstate travel with intent to commit criminal sexual activity with a minor in violation of 18 U.S.C. §§ 2423(b), 2243, and 2246.[1]  At Abad's detention hearing on August 25, 2003, the magistrate judge noted the Pretrial Services Report (Pretrial Report) recommended Abad be detained as a flight risk and as a danger to the community.  The Pretrial Report and the hearing evidence revealed the following: (1) Abad is a 26-year-old unmarried Philippine citizen who has no children and resides with his parents in Hialeah, Florida; (2) Abad is well-educated and, at the time of arrest, was working as a registered nurse in Miami Children's Hospital; (3) Abad contacted an Iowa girl through an Internet chat room for 13- and 14-year olds; (4) Abad traveled to Iowa and had various forms of sexual relations with the Iowa girl, in the girl's residence and in Abad's hotel room, over a two-day period; (5) upon arrest, Abad possessed a digital camera and sexual items; and, (6) after receiving Miranda warnings, Abad admitted he knew the Iowa girl was 13 years old.  Abad told the Iowa 13-year old he previously had traveled to Michigan for sex with a 15-year old girl.  The hearing evidence further established Abad had engaged in "web-cam sex" with the 13-year old Iowa girl before going to Iowa.  In Iowa, Abad used his digital camera to take video clips of the girl masturbating and performing oral sex on Abad.  At the hearing, several members of Abad's family were present, supporting his release.

The magistrate judge denied the government's motion for detention.  Although the magistrate judge found there was probable cause to believe Abad committed the offense, and remarked at the hearing that the government's case against Abad was "pretty overwhelming,"  the magistrate judge found Abad rebutted the statutory presumption favoring detention and the government failed to demonstrate, by clear

---

[1]The government's brief states the government intends to seek a superseding indictment against Abad, including a charge for production of child pornography under 18 U.S.C. § 2251(a), which carries a minimum sentence of 15 years.  18 U.S.C. § 2251(e).

and convincing evidence, Abad was a danger to the community, or to show, by a preponderance of evidence, Abad was a flight risk. The magistrate judge noted Abad has no prior criminal history, Abad was attending college, Abad did not use subterfuge to convince the girl to meet him, and Abad's family was willing to act as third-party custodians. The magistrate judge's order required Abad to surrender his passport and imposed home detention with electronic monitoring, but permitted Abad to leave home, without supervision, to work and to attend school. The release order implicitly permits Abad to return to his nursing job at Miami Children's Hospital.

The government appealed the denial of detention to the district court. The district court stayed the release order and, on August 29, 2003, held a hearing on the appeal. The district court did not examine the photographs or video of the victim. At the hearing, Abad's attorney introduced an "Internet profile" that showed the 13-year old as a 20-year old. Abad's attorney admitted she had downloaded the profile from the Internet, and she presented no evidence showing Abad had ever seen the profile. The district court denied the detention appeal, while acknowledging that, when it initially read the indictment, the court wondered why detention had not been ordered. After the district court considered the evidence adduced about the 13-year old girl and the "advertis[ing]" she had done on the Internet, the court determined "this case is not quite as 'dangerous' as urged by the government." The district court adopted the magistrate judge's ruling, denied the government's motion for detention, and ordered execution of papers by which Abad's parents would lose the equity interest in their home if Abad failed to appear for trial.

The government appealed the district court's decision and requested a stay of the release order. After the government appealed, the district court filed another order expressing additional reasons for denying detention, saying the minor girl's active participation on the Internet "lessens the introductory contempt of the actions of the defendant," and persuaded the court this "was not the usual 'poor victim' situation."

## II. DISCUSSION

### A. Standard of Review

We apply the clearly erroneous standard of review to the factual findings made by the district court. United States v. Maull, 773 F.2d 1479, 1488 (8th Cir. 1985) (en banc). "However, conclusions and reasoning relating to the ultimate questions flowing from such factual considerations–issues such as . . . the determination of the conditions that will reasonably assure the appearance of the defendant–should be the subject of independent review." Id. at 1487.

### B. 18 U.S.C. § 3142

A defendant may be detained before trial "[o]nly if the government shows by clear and convincing evidence that no release condition or set of conditions will *reasonably assure* the safety of the community and by a preponderance of the evidence that no condition or set of conditions . . . will *reasonably assure* the defendant's appearance . . . ." United States v. Kisling, 334 F.3d 734, 735 (8th Cir. 2003) (quoting United States v. Orta, 760 F.2d 887, 891 (8th Cir. 1985) (en banc); 18 U.S.C. § 3142(c), (e)-(f)).

Because the district court found probable cause Abad committed an offense under 18 U.S.C. § 2423, a statutory rebuttable presumption arises "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e). Assuring a criminal defendant's appearance at trial is a legitimate government objective. Detaining adults who prey on children for the adult's sexual gratification or for the production of child pornography is also a legitimate government objective. One of the fundamental duties of government is public safety, including protecting children from sexual predators.

In determining if release conditions exist that will reasonably assure the appearance of a defendant at trial and the safety of the community, the court considers

the following: (1) the nature and circumstances of the crime; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including mental condition, family ties, employment, community ties, and past conduct; and (4) the seriousness of the danger to the community or to an individual. 18 U.S.C. § 3142(g). "In a presumption case such as this, a defendant bears a limited burden of production–not a burden of persuasion–to rebut that presumption by coming forward with evidence he does not pose a danger to the community or a risk of flight." United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001). "Once a defendant has met his burden of production relating to these two factors, the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court." Id.

The government contends Abad failed to rebut the presumption favoring detention. Alternatively, the government contends, assuming Abad rebutted the presumption, the government presented sufficient evidence to establish Abad is a danger to the community and a flight risk. We agree the evidence establishes Abad is a danger to the community and a flight risk.

### C.    Evidence Adduced at Detention Hearing
### 1.    Presumption Favoring Detention

To rebut the presumption favoring detention, Abad introduced the Pretrial Report, letters from members of his community, and evidence Abad's family is willing to act as third-party custodians. Abad also showed, if he fails to appear for trial, his family will forfeit a $65,000 equity interest in the parents' Hialeah, Florida, home. In analyzing the factors listed in 18 U.S.C. § 3142(g), we conclude the district court did not clearly err in finding Abad met his burden of production to rebut the detention presumption. Still, the presumption favoring detention does not disappear, but remains for consideration.

### 2. Evidentiary Rulings

The district court found the "Internet profile" of the Iowa girl, depicted as a 20-year old, lessened Abad's danger to the community. Because no foundation exists to establish Abad ever saw the Internet profile, this factual finding is clearly erroneous. Abad met the Iowa girl in a 13- and 14-year old Internet chat room. Abad viewed the Iowa girl over a web-cam before traveling to Iowa to meet her in person. After seeing the girl in person, Abad proceeded to engage in sexual relations with her and to take digital images of her. Even assuming Abad traveled to Iowa under the mistaken belief the girl was 20 years old, this erroneous belief should have been dispelled when Abad met the 13-year old. Following arrest, Abad admitted he knew the girl was 13 years old.

Similarly, the district court clearly erred in finding that the minor girl's willing participation mitigated the danger. Although the district court recognized the girl's consent was no defense, the court reasoned the girl's "active participation in" the "offensive sexual conduct over the Internet" did not present "the usual 'poor victim' situation." The consent or willing participation of the 13-year old girl is insignificant and hardly relevant. "[W]hen sexual assaults are committed upon children . . . , consent is not a defense. The reason is that the victims in these cases, because of ignorance or deceit, do not understand what is happening to them. Therefore their 'consent' is of no significance." Guarro v. United States, 237 F.2d 578, 581 (D.C. Cir. 1956). See also United States v. Gomez-Hernandez, 300 F.3d 974, 979 (8th Cir. 2002) (holding defendant's prior crime of unlawful sexual intercourse with a minor is a crime of violence "because there is physical contact with a victim who is incapable of lawful consent"). The law assumes a 26-year old has the maturity and self-control to say "no" to a willing or even solicitous 13-year old.

### 3.     Danger to the Community

Abad has no prior criminal history.  However, the nature of the crime charged–sexual activity with a minor–weighs heavily against release.  Strong evidence links Abad to this crime of violence.  See 18 U.S.C. §§ 3156(a)(4)(C), 2243, 2246 & 2423(b).  At the time of Abad's arrest, the police found a digital camera, condoms, KY Jelly, used contraceptive gels, and a dildo in Abad's hotel room.  Abad admitted (1) he knew the girl was 13 years old, and he had met her in an Internet chat room for 13- and 14-year olds; (2) he engaged in telephone sex and web-cam sex with the girl before traveling to Iowa; and (3) he used a digital camera to take photos and video clips of the 13-year old girl masturbating and performing oral sex on Abad.  The photos and video clips were found on the digital camera.  Further, the government presented testimony Abad told the Iowa girl he previously, at the age of 22, had sex with a 15-year-old in Michigan.  Based upon the evidence presented, we find the district court erred in ruling Abad is not a danger to the community.  In particular, releasing Abad so he may return to his nursing position at Miami Children's Hospital is a clear abuse of discretion.

### 4.     Flight Risk

Abad is not a United States citizen.  Although Abad's family members are willing to pledge a $65,000 equity interest in the parents' home, such surety is insufficient to assure Abad's presence at trial.  Abad faces a maximum sentence of 30 years, see 18 U.S.C. § 2423(b), which reduces the significance of the surety amount and weighs strongly in favor of a finding Abad would be a flight risk. Although electronic surveillance is available, when considering all the factors at issue in the present case, there is insufficient evidence to assure Abad's appearance at trial. See Mercedes, 254 F.3d at 437 (noting home detention, family assurances and electronic monitoring not sufficient in face of strong evidence defendant presented flight risk and danger to community).

To counter the government's evidence regarding risk of flight, Abad offered five letters of support from family members and friends. However, none of the letters indicate the writers knew the nature of Abad's alleged crime. Two of the letters reference only the writers' familiarity with Abad's family rather than with Abad himself. Needless to say, these letters do not tip the scales when weighed against the government's damning evidence. Abad's family's willingness to supervise Abad while he is home is entitled to little weight, because Abad contacted the Iowa girl and engaged in web-cam sex with her while living at home with his family. Taking possession of Abad's passport has little flight deterrence considering the ease of travel to Mexico and Canada. Simply stated, we conclude Abad is a flight risk.

### D.  Mercedes

In concluding Abad presents both a flight risk and a danger to the community, we are guided by the Second Circuit's reasoning in Mercedes, in which the Second Circuit reversed the district court's grant of pretrial release for three defendants, one of whom, Danielle Bautista, was a foreign national indicted for a crime of violence–armed robbery of a drug dealer. Id. at 435, 438. The district court found the government failed to show by clear and convincing evidence Bautista was dangerous, because Bautista had no prior criminal record and no weapons or contraband were found. The district court also found the government failed to show by a preponderance of evidence Bautista was a flight risk, despite his Dominican Republic citizenship, because Bautista was a permanent resident of the United States and had consented to home monitoring and electronic surveillance. First, as to Bautista's danger to the community, the Second Circuit found the government met its burden by presenting "significant evidence linking Bautista to the violent crime for which he was indicted." Id. The court noted Bautista was present at the time of the robbery with other defendants who were involved in the potential drug heist. Second, though agreeing with the district court that the lack of a criminal record weighed in favor of release, the Second Circuit concluded the government met its burden of showing Bautista presented a substantial flight risk. Id. Importantly, the

-8-

court noted, Bautista was unemployed[2] and was not a United States citizen.  Id.
Based upon the relatively small amount of money Bautista was assessed as a surety
and the potential sentence he faced, the Second Circuit decided the risk Bautista "may
flee weigh[ed] strongly against his release."  Id.  We find the reasoning and
conclusion in Mercedes persuasive.

## III.    CONCLUSION

We conclude the district court's factual findings when denying detention were
clearly erroneous insofar as the district court relied on the "Internet profile" and the
minor girl's "active participation."  Based upon the record, we conclude the
government proved, (1) by clear and convincing evidence, Abad is a danger to the
community; and, (2) by a preponderance of the evidence, Abad is a flight risk.
Accordingly, we reverse and vacate the district court's pretrial release order, and we
remand for further proceedings.

_____

[2]This could serve to distinguish Abad from Bautista; however, the government
represented at oral argument Abad no longer holds his job as a nurse at Miami
Children's Hospital.  Even if Abad were still employed at Miami Children's Hospital,
such employment would obviously not be advisable, and would not weigh in favor
of release.