**UNITED STATES of America,**
**Plaintiff,**

v.

**Raynikka ADAMS, Defendant.**

**No. 3:11–cr–016.**

United States District Court,
S.D. Iowa.

June 23, 2011.

Diane Z. Helphrey, Federal Public Defender, Davenport, IA, for Defendant.

Lisa C. Williams, United States Attorney's Office, Davenport, IA, for Plaintiff.

## ORDER

ROBERT W. PRATT, Chief Judge.

Before the Court is Defendant Adams' Motion (Clerk's No. 24), filed on June 14, 2011, requesting review of the Detention Order issued by United States Chief Magistrate Judge Thomas J. Shields (Clerk's No. 17). The Government has not filed a timely Resistance to the Motion. The matter is fully submitted.

## I. STANDARD OF REVIEW

When considering appeals of pretrial detention orders, a district court reviews the magistrate's decision de novo. *United States v. Maull*, 773 F.2d 1479, 1481 (8th Cir.1985). When reviewing the magistrate judge's detention order, the district court must make the same inquiry regarding a defendant's risk of flight and danger to the community as did the magistrate. *Id.* at 1484.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On December 23, 2010, Davenport police received a report that the odor of burnt marijuana was coming from an apartment. *See* Hr'g Tr. at 4. Defendant was listed as the sole occupant on the apartment's lease. *See id.* at 6. However, it is unclear whether Defendant was actually living at the apartment at the time, or instead was living at home with her father. *See* Pretrial Serv. Rep. (Clerk's No. 18) at 1 ("[Defendant's father] advised there was a period of time when the [D]efendant had moved out of his home; however, she had recently returned to live with him several months prior to her arrest."). In any event, when officers responded to the call, Defendant and two of her cousins, Deandere Randolph ("Randolph") and Kevin Mitchell ("Mitchell"), were in the apartment. *See id.* at 7. Officers entered and observed several narcotics-related items in plain view. *See id.* at 5. They then obtained, and executed, a search warrant on the premises. *See id.*

During the search, officers found approximately twenty-two grams of crack cocaine, a small amount of marijuana, and two handguns. *See id.* The majority of the crack cocaine and one of the handguns were located inside a safe.[1] The other handgun—a pink revolver that was later determined to have been stolen in a burglary—was found in a dresser drawer. *See id.* at 5–6. Both firearms were loaded. *See id.* at 6. One of Defendant's cousins[2] claimed ownership of the firearm that was located in the safe. *See id.* at 10. No one admitted to owning the second firearm. *See id.* When questioned, Defendant denied knowledge of the firearms and the narcotics found in the apartment. *See id.* at 7–8.

Based on the items discovered during the search, on February 16, 2011, Mitchell and Randolph were indicted. *See* Clerk's No. 2. Each was charged with one count of possession of a controlled substance with intent to distribute, and one count of possession of a firearm in furtherance of drug trafficking. *See id.* Randolph was also charged with one count of being a felon in possession of a firearm. *See id.* On May 18, 2011, a Superseding Indictment was filed that included the same charges as the original Indictment, but also charged Defendant with one count of maintaining a drug involved premises, in violation of 21 U.S.C. § 856(a)(2). *See* Clerk's No. 7. The maximum penalty for a violation of § 856 is a twenty year prison sentence. *See* 18 U.S.C. § 856(b).

On May 31, 2011, Magistrate Judge Shields held a detention hearing. *See* Clerk's No. 16. At the hearing, Defendant argued she posed neither a risk of flight nor a risk to the safety of the community. To support these claims, she presented her father and step-mother as willing third-party custodians, proffered that her employer, Friendship Manor Nursing Home, would allow her to return to work if released, and noted that she has no criminal history. *See id.* at 11. The Government argued that placement with Defendant's father would not address the potential danger that Defendant would pose to the community, because Defendant would likely continue to associate with her cousins, given that they had not yet been taken into custody.[3] *See id.* at 13. The Government also argued that detention was necessary

---

1. The crack cocaine and firearm were located inside a suitcase bearing Defendant's name. The suitcase was found inside the safe. *See* Hr'g Tr. at 5.

2. The officer testifying at the detention hearing was unsure whether it was Randolph or Mitchell. *See* Hr'g Tr. at 10.

3. When the detention hearing was held, neither Mitchell nor Randolph had been appre-

because firearms were involved in the offense. *See id.* On June 1, 2011, Magistrate Judge Shields ordered that Defendant remain in custody pending trial. *See* Clerk's No. 17. Defendant now seeks review of that Order, pursuant to 18 U.S.C. § 3145(b).

## III. LAW AND ANALYSIS

### A. *Relevant Law*

■ Pre-trial detention is authorized when "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community...." 18 U.S.C. § 3142(e)(1). "[E]ither danger to the community or risk of flight is sufficient to authorize detention." *United States v. Sazenski,* 806 F.2d 846, 848 (8th Cir.1986). Generally, the Government has the burden of showing "by clear and convincing evidence that no release condition or set of conditions will reasonably assure the safety of the community and by a preponderance of the evidence that no condition or set of conditions ... will reasonably assure the defendant's appearance...." *United States v. Kisling,* 334 F.3d 734, 735 (8th Cir.2003) (quoting *United States v. Orta,* 760 F.2d 887, 891 (8th Cir.1985)) (emphasis omitted). However, as is the case here, when a defendant is charged with a violation of the Controlled Substance Act for which the maximum term of imprisonment is ten years or more, there is a rebuttable presumption "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e)(3).

■ In such cases, the defendant has the "burden of production ... to rebut that presumption by coming forward with evidence he does not pose a danger to the community or a risk of flight." *United States v. Abad,* 350 F.3d 793, 797 (8th Cir.2003) (quoting *United States v. Mercedes,* 254 F.3d 433, 436 (2d Cir.2001)). Once the burden of production is met, "the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court." *Id.* In determining if release conditions exist that will reasonably assure the appearance of a defendant at trial and the safety of the community, the Court considers the following: (1) the nature and circumstances of the crime; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including mental condition, family ties, employment, community ties, and past conduct; and (4) the seriousness of the danger to the community or to an individual. *See* 18 U.S.C. § 3142(g).

### B. *Application*

■ Given the presumption favoring detention in this case, the Court must first determine whether Defendant has met her burden of production by presenting evidence that she is neither a flight risk nor a risk to the community. *See Abad,* 350 F.3d at 797. In addition to her complete lack of criminal history, Defendant has presented her parents as willing third-party custodians and shown that she would have employment if released. The Court considers this showing sufficient to satisfy Defendant's limited burden of production, and thus turns to the § 3142(g) factors in order to determine if there are any conditions which can reasonably assure both her appearance and the safety of the community.

#### 1. *Flight risk.*

■ Magistrate Judge Shields determined that Defendant posed a flight risk based largely on the nature and circum-

hended. However, Mitchell was arrested on June 16, 2011. *See* Clerk's No. 29.

stances of the offense. *See* Detention Order at 2. The Court agrees that certain circumstances do increase the risk that, if released, Defendant would flee. Specifically, the Court notes that the offense involved a significant amount of crack cocaine, that one of the Co–Defendants has not yet been taken into custody, and that if convicted, Defendant faces the possibility of a lengthy prison sentence. Nevertheless, the Court finds that there are a number of other factors that mitigate this risk.

As an initial matter, the Court does not find that the great weight of the evidence is against Defendant. There is certainly incriminating evidence, including the fact that the apartment was leased to her, she was at the apartment when the police arrived, and the majority of the drugs were found in a suitcase bearing her name. But there is also evidence suggesting that she moved out of the apartment several months before the arrest took place and that she may not have known her cousins were using the apartment to store or distribute drugs. Thus, the Court does not consider the evidence against Defendant so overwhelming that she is likely to flee if released pending trial. More importantly, Defendant's history and characteristics strongly indicate that she is not a flight risk. She is a life-long resident of Rock Island, Illinois, and she has never left the country. For the two years leading up to her arrest she had maintained steady employment at Friendship Manor Nursing Home, and apparently will be able to return to this job if released pending trial. She also has no criminal history, which would likely lessen any sentence she would receive if convicted. Finally, her father and step-mother are willing to allow her to live with them and will serve as her third-party custodians.

Based on this combination of factors and, in particular, her lack of criminal history and strong family support, the Court concludes that the Government has not shown by a preponderance of the evidence that Defendant will not appear as required if released pending trial. The Court now turns to examine the danger that Defendant's pretrial release would pose to the community.

### 2. Safety of the community.

■ The Government presents four arguments in support of its conclusion that Defendant's pretrial detention is necessary to reasonably assure the safety of the community. First, it notes that the circumstances of this offense involved two firearms, which pose an obvious and grave danger to the community. *See* Hr'g Tr. at 13. Second, it argues that the evidence overwhelmingly points to Defendant's guilt. *See id.* at 14. Third, it claims that because Randolph has not yet been arrested, Defendant would likely continue to associate with him if released. *See id.* at 13. Finally, the Government discounts the significance of Defendant's lack of criminal history by arguing that she is only twenty, and that she "simply has not had time to get started building a record." *See id.* at 12.

As with Defendant's risk of flight, the Court acknowledges that there are certain facts that indicate Defendant's pretrial release could pose a risk to the safety of the community. Specifically, the fact that two firearms were involved in the offense gives the Court pause. However, Defendant's connection to these firearms is uncertain. Defendant was not charged in relation to either firearm, nor is it clear that she was aware of their presence.[4]

---

**4.** There were several references at the detention hearing to the fact that the second firearm was pink. *See* Hr'g Tr. at 6, 8, 10 and 15. The Court is unsure what significance, if any, the gun's color has. However, particularly because the gun had previously been stolen in a burglary, the Court does not con-

Also, as previously discussed, the Court does not consider the evidence against Defendant overwhelming, nor does it consider the evidence against her to necessarily suggest that her release would pose a danger to the community.

More importantly, the Court considers Defendant's complete lack of criminal history—including any history of violence—strong evidence that she would not be dangerous if released pending trial. While the Government argues that Defendant's youth mitigates the significance of this factor, the Court does not find this argument persuasive, and is not willing to penalize Defendant for her relative youth. Finally, the Court will not assume that if released to her father's custody, Defendant will likely continue to associate with Randolph. While the Government argues that this is likely, based apparently on family ties, the Court finds that the available evidence suggests the exact opposite is more likely to occur. Defendant was never in any legal trouble while living with her father and only encountered legal problems after moving out and leasing her own apartment. The Court believes that, if released to her father's custody, it is more likely that she would not associate with Randolph, a wanted fugitive, given her established track record of law abiding behavior while living under her father's watch. Thus, the Court concludes that the Government has not shown by clear and convincing evidence that if Defendant is released pending trial, no set of conditions can reasonably assure the safety of the community.

### C. *Conditions of Release*

The Court orders that Defendant be released to the custody of her father, Harold Adams, and that Mr. Adams sign a standard third-party custodian agreement. In addition, Defendant is ordered to reside at her father's residence while on pretrial release and comply with the following conditions listed on the Order Setting Conditions of Release: 7(a), 7(e), 7(h), 7(n), 7(p), 7(q), 7(s) and 7(u). Finally, Defendant shall permit a probation officer to visit her at home at any time during her pretrial release and submit to substance abuse and mental health screening as directed by the pretrial services office.

### IV. CONCLUSION

For the reasons stated herein, Defendant's Motion for Review of the Magistrate Judge's Order (Clerk's No. 24) is GRANTED. The Magistrate Judge's Detention Order is reversed. Defendant is ordered to be released pending trial, subject to the conditions stated in this Order and those listed in the Order Setting Conditions of Release.

IT IS SO ORDERED.

---

sider the gun's color as probative evidence as to whom it belonged.